TIGER *v.* LINCOLN et al.

NEW TRIAL — *sufficiency of evidence to support finding.*   In determining the relative credit to be given to the testimony of conflicting witnesses, so much consideration is due to the manner and bearing of each under exam

ination, and their apparent intelligence and candor, or prejudice, that a court of review, to which all these things are hidden, ought not lightly to reject the opinion of either court or jury, before whom the witnesses for both parties have been subjected to examination and cross-examination.

Where a witness for the plaintiff testified that the defendant purchased goods of the plaintiff, and the defendant denied that he had made such purchase, and the court found the issue for the plaintiff, such finding will not be set aside for insufficient testimony.

Where, however, the finding is unsupported as to a portion of the damages assessed, the judgment will be reversed and the cause remanded, with directions to the court below to enter judgment for the proper sum.

AGENT — *who is charged as principal must show previous authority.* In an action against T. to recover the price and value of certain goods alleged to have been purchased by him, the defendant alleged that he purchased the goods for B., and as his agent; but there was nothing to show that B. had given to T. authority to purchase such goods. *Held,* that the defense was not made out.

NONJOINDER *of defendants must be pleaded in abatement.* Nonjoinder of defendants is never a bar but only matter in abatement.

RELEASE OF DEFENDANT *by accepting third party.* In an action for the price and value of goods, the defendant alleged that he purchased the goods as agent for B., and it appeared that some time after the purchase was made plaintiffs rendered an account to B. in which he was charged with the balance of defendant's bill, for which action was brought. There being no evidence to show that plaintiffs agreed to accept B. as their debtor, or that B. agreed to pay the debt, the defendant was not thereby discharged.

## *Appeal from Probate Court, Arapahoe County.*

AT the trial Alonzo Huxley testified: That he was present at a conversation between the defendant and Mahar, at what is now the place of business of Strickler and Mahar, formerly Lincoln & Strickler. The conversation was in relation to a bill of goods. He, the defendant, admitted the buying of $473 worth of goods on his personal account.

On cross-examination the witness stated: The defendant did not claim that he had paid any part of the money on these goods, nor that any thing had been paid on them. He claimed that he paid $200 on account of Bigelow, or on the Bigelow account. What his statements were I do not remember; I could not swear that he did, or did not, claim that the goods were sold to Bigelow. He claimed that the amount due was the debt of Bigelow; He admitted he had

an account there; He claimed these goods were bought for Bigelow.

Re-direct: He said he had bought the goods individually; can't recollect whether he admitted that he owed the amount of the bill or not; Tiger claimed that the goods were bought for Bigelow; the exact amount I do not remember; I do not know that Tiger denied the debt at all; He admitted that he owed for the goods; He also admitted that they had not been paid for; He claimed that he bought the goods for Bigelow; I was present at but one conversation.

Con. J. Mahar testified: I have had a conversation with the defendant in reference to the account sued on in this cause; the defendant agreed to send the money back from Pueblo to pay for the goods mentioned in that account; this was at the time of the sale of the goods; he came back afterward and said he had sold out to Bigelow, and that he wished us (Lincoln & Strickler) to send our bill to Bigelow and try and get our pay for the goods from him (Bigelow). Bigelow had an account with us (Lincoln & Strickler) at the time these goods were sold. I have always understood that Bigelow and Tiger were partners. Peter Tiger came there to Lincoln & Strickler in May, 1868, and bought a bill of goods.

Witness is here shown the account, amounting to $473.11.

I sold these goods to Peter Tiger; they were charged to his private account on the books of Lincoln & Strickler; he (Tiger) agreed to pay for them, and to send the money back from Pueblo on his trip south. At his second conversation with me, which was on his return, he told me he had sold out to Bigelow, and that Bigelow had agreed to pay for these goods, and wanted us (Lincoln & Strickler) to send the bill to Mr. Bigelow; that was on his return; he went on to make a statement when Bigelow would pay it; he stated to me in our (Strickler & Mahar's) office, at the time of the conversation testified to by the witness Huxley, which was after the commencement of this suit, that he had bought the goods, but that he had sold them to Bigelow.

and had never got any pay for them. This is the bill of goods I sold to Tiger (again referring to the above bill of goods), and they were delivered to Tiger. At the time Tiger bought the goods he wanted to get them for Bigelow, and I would not let him have them for Bigelow; I let him have them on his own account.

On cross-examination the witness was shown two bills or accounts which he said were in the handwriting of Strickler, one of the plaintiffs, and another bill or account which he said was in the handwriting of Lincoln, another plaintiff. The witness then stated as follows: Tiger asked us to make out a bill and send to Bigelow; this was after his return; it must have been four weeks after the sale of the goods; John Bigelow owes Lincoln & Strickler an account; Tiger never paid a dollar on those goods to my knowledge.

Plaintiffs then introduced their book of accounts, showing a bill corresponding with that shown the witness Mahar, amounting to $473.07.

The plaintiffs then rested, and the defendant then introduced the three bills or accounts identified by the witness Mahar, and which were entitled.

"Mr. John Bigelow,
                "Bought of Lincoln & Strickler."

The first contained an item as follows:

"May 27, 1868. To balance bill, P. Tiger, $273.11."

Alexander DeLappe testified, that he presented these accounts to John Bigelow for payment some time between Christmas, 1868, and New Year, 1869; I presented them on behalf of Lincoln & Strickler.

The defendant testified as follows: I bought these goods for John Bigelow; I had a conversation with Mahar; the plaintiffs never presented any bill to me for this balance; I never had any conversation in 1868 with Mahar, after the time of buying the goods; I left Denver on the 29th of May, 1868, after the purchase of these goods, and did not return to Denver until the 4th of July following, and was not in

Denver at any time between those two dates; I never had communication of any kind with either Mahar or Strickler between those dates; I recollect the amount of the bill of goods bought May 28, 1868, it was $473.11; I took the goods away and delivered them to Bigelow; at the time of buying the goods I paid $200, on account of Bigelow, to Lincoln & Strickler, and Bigelow paid me a part of it back; it was after the serving of the attachment in this cause that I had a conversation with Mahar; Mahar asked me if I would not settle; I am not indebted to the plaintiffs one dollar, either on this or any other bill.

Cross-examination: Bigelow had bought goods before that time; Mahar told me, at the time I spoke to him about buying the goods, that I should wait a day or two until he could see whether Bigelow could have any more goods; he did not tell me if I would pay for these goods he would let me have them; he did not tell me when I came to load up these goods that he did not look to Bigelow for the pay for these goods; he asked me if Bigelow would send the money, and I told him I thought he would; I did not agree to send the money from Pueblo; I was not in business of that kind; Bigelow paid $200 on his account, that I agreed to pay for him.

Re-direct: All the goods were delivered to Bigelow, excepting a few that I delivered to a man on the road, by Bigelow's direction; I never agreed to pay for the goods.

Mr. S. E. BROWNE, for appellant.

Mr. L. B. FRANCE, for appellee.

WELLS, J. This was an action of assumpsit, to recover the price of goods sold and delivered by appellees to appellant.

The defendant below pleaded the general issue, and, by agreement of parties, the cause was tried by the court without jury, the issues were found for the plaintiffs, and damages were assessed at $473.11, the full amount claimed,

and, after overruling a motion for a new trial, judgment was given upon the finding.

The defendant asserted in the court below, that, in the purchase of these goods, he acted as the agent of one Bigelow, and that the credit was extended to Bigelow, and not to defendant.

We see no error in the rulings of the court below, touching the admissibility of evidence, and the only remaining questions which can be said to be presented by the assignment of errors are, first, whether the finding of the court below is sustained by the evidence; second, whether the damages were correctly assessed.

The first question resolves itself into an inquiry as to the weight of evidence, and we are of the opinion that we ought not to reverse the finding of the probate court, unless manifestly erroneous.

In determining the relative credit to be given to the testimony of conflicting witnesses, so much consideration is due to the manner and bearing of each under examination, and their apparent intelligence and candor or prejudice, that a court of review, to which all these things are hidden, ought not lightly to reject the opinion of either court or jury, before whom the witnesses of both parties have been subjected to both examination and cross-examination. So the rule stands upon grounds of reason, and authorities in support of it are not wanting. *Webster* v. *Vickers*, 2 Scam. 295; *Harman* v. *Thornton*, id. 351.

With this rule controlling us, we cannot say that the court below erred in preferring the testimony of the witness Mahar, sworn on the part of the plaintiff, to that of the defendant who testified in his own behalf. These were the only witnesses sworn who, so far as appears, had any knowledge of the transaction at the time of its occurrence. We find no difficulty, however, in justifying the finding of the court below, even though the testimony of the defendant be accepted as a true relation of the transaction.

It is admitted by the defendant that he bought and received the goods to the amount for which the recovery was

had ; but it is claimed by his counsel that, in this purchase, he acted on behalf of Bigelow, and as his agent. Upon this point the testimony of the defendant is, and we adopt his own language, "that he bought the goods for John Bigelow, and delivered them to him."

He nowhere states that he was ever authorized by Bigelow to purchase these, or any other goods, on his account, nor whether he delivered these goods to Bigelow as belonging to him, or whether the delivery was in pursuance of a sale by himself. The law is well-settled that, where one is sought to be charged for an act done in pursuance and discharge of an alleged agency, the burden is upon him to show the fact of the agency, and that the transaction upon which the action is based was in pursuance and an ostensible discharge of that agency.

And though we should reject the testimony of Mahar, as to the subsequent declarations of the defendant, that he had sold the goods to Bigelow, and accept the fact of Bigelow's having received the goods as an acknowledgment or ratification of defendant's assumed agency, still this, according to the authorities, would not suffice to bar this action.

It must appear that there was an original appointment subsisting at the time of the transaction. *Rossiter* v. *Rossiter*, 8 Wend. 494.

It is said, that, by the testimony of Mahar, it appears that defendant and Bigelow were partners. Even if we accept the statement of the witness, as intended to have reference to this particular transaction, still it cannot, we think, defeat this action. Non-joinder of defendants is never a bar, but only matter in abatement.

We must then, upon this evidence, concur in the finding of the court below, that Tiger was originally liable to the plaintiffs, and, if liable originally, he of course remained so unless discharged by the subsequent act of the plaintiffs.

Upon this point it appears by the testimony of DeLappe, that between Christmas, 1868, and January, 1869, he, acting for the plaintiffs, presented to Bigelow an account, bearing

date in June previous, and in which, under date of May 27, is charged balance bill, P. Tiger, $273.11.

It is claimed in argument, as we understand counsel, that hereby it appears that Bigelow and not Tiger was responsible for the balance ; but this item seems to us to establish the certainty of this, that is to say, that in the first instance at least credit was extended to Tiger and not to Bigelow, and the plaintiffs, by charging the amounts over to Bigelow, have not released the defendant, unless this change in the accounts was made with intent to release him and upon a consideration.

If Bigelow had agreed to pay the demand, and the plaintiffs had agreed to accept him as their debtor in lieu of the defendant, the arrangement would have been an effectual one ; but no act or declaration of a creditor, however express, ought to be accepted as a release of his debtor, or as an acceptance of one in substitution for another, unless the person to be substituted assent to the arrangement, or there be some other consideration for the release or substitution, or unless it be evidenced by writing under seal, so importing consideration.  We fail to find in this record any evidence that this change in the accounts was made with intent to discharge the defendant, that Bigelow ever assented thereto, or that there was any other consideration therefor.  As to the intent of plaintiffs it rather appears that this item was inserted in Bigelow's account in pursuance of defendant's request, spoken of by Mahar, and out of complacency to defendant, to relieve him of the necessity of collecting from Bigelow.  If the intent had been to discharge the defendant, whether Bigelow paid the amount or not, defendant would have been credited with the amount charged to Bigelow ; but this does not appear.  An account was rendered to Bigelow it is true, with this balance set down therein against him, but whether he assented or objected to this item was not shown.  It rested upon the defendant below to establish affirmatively that Bigelow assented to the arrangement.

We are of opinion, therefore, that the probate court did

not err in finding this issue for the plaintiff. But in the assessment of damages we think there is error.

The bill of goods sold amounted originally to $473.11. The defendant testifies that he paid plaintiffs at the time of the purchase $200, which, he says, was upon Bigelow's account. In the account rendered to Bigelow, and before adverted to, plaintiffs charge Bigelow with the balance of Tiger's bill, $273.11. It is true this charge is under date of May 27, while the transaction in question appears to have taken place on the 28th; but it does not appear that defendant ever had any other bill with plaintiffs than that for these particular goods. The bill rendered Bigelow is proven to be in the handwriting of one of the plaintiffs, and, from all the circumstances in proof, we are compelled to believe that this charge in the account rendered to Bigelow refers to the identical transaction in controversy, that the $200 paid by Tiger, at the time of the purchase (which, it is true, he testified was paid on account of Bigelow, but which appears, nevertheless, to have been his own money and not Bigelow's, for he testifies that Bigelow repaid him part of it), was credited by plaintiffs to this account.

These deductions seem to us inevitable from the evidence contained in the record, and are fortified by the omission of the plaintiffs to explain in the court below, as they might have done by their own testimony, whatever is doubtful.

For the error in the assessment of damages, therefore, the judgment of the probate court is reversed, and the cause will be remanded to that court, with directions to enter judgment upon its finding for the sum of $273.11.

*Reversed.*